# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00696-COA

**JOHN E. WRENN A/K/A JOHN EDWARD**                      **APPELLANT**
**WRENN A/K/A JOHN WRENN**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/2015 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANNA KATHERINE ROBBINS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DENIED PETITION FOR POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED - 01/10/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     John Wrenn pled guilty to the charge of possession of a weapon by a convicted felon and was sentenced to ten years in the custody of the Mississippi Department of Corrections (MDOC).  Wrenn pled guilty as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015), so his ten-year sentence was mandatory and without the possibility of parole or probation.

¶2.     Wrenn subsequently filed a pro se petition for post-conviction relief (PCR) alleging, among other things, that his plea was involuntary because his attorney and the circuit court

misinformed him of the applicable minimum sentence. After an evidentiary hearing, the circuit court denied Wrenn's petition. However, because Wrenn was misinformed of the applicable minimum sentence under the habitual offender statute, his guilty plea was involuntary as a matter of law. Therefore, we reverse and render the circuit court's judgment denying Wrenn's PCR petition and set aside Wrenn's conviction.

## FACTS AND PROCEDURAL HISTORY

¶3.     In June 2011, Wrenn, a convicted felon, was indicted for unlawfully possessing a sawed-off shotgun in violation of Mississippi Code Annotated section 97-37-5 (Rev. 2014). He was indicted as a habitual offender under section 99-19-81. Jack Jones was appointed as counsel for Wrenn, and the circuit court set the case for trial in November 2011. Prior to trial, the State offered to allow Wrenn to plead guilty as a non-habitual offender with a sentencing recommendation of five years to serve, followed by five years of post-release supervision. Jones urged Wrenn to accept the State's offer, but Wrenn declined.

¶4.     On November 8, 2011—the day before his trial was scheduled to begin—Wrenn filed a petition to enter a guilty plea. The petition stated: "I plead guilty to the charge(s) of felon in possession of a firearm in violation of Miss. Code Ann. § 97-37-5 [and] § 99-19-81, as set forth in . . . the indictment . . . ." The petition also stated:

> My lawyer has informed me as to the maximum and minimum punishment which the law provides for the offense charged in the indictment. The maximum punishment which the Court may impose for this crime that I am charged with is 10 years imprisonment and $5,000 fine. The minimum punishment is 1 years imprisonment and/or $0 fine.

The words "without parole" were handwritten above the words "10 years imprisonment" on

2

the petition. A handwritten entry in the petition described the terms of the plea as follows: "open to charge in indictment"; "continued for sentencing"; "State makes no offer."

¶5. At Wrenn's plea hearing on November 9, 2011, the judge specifically asked Wrenn whether Jones had "been over with [him] the implications . . . of offering a plea under the habitual criminal statute" and whether Wrenn understood that the statute "provides for enhanced punishment." Wrenn answered both questions, "Yes, sir." Moments later, the court again asked Wrenn, "Do you understand that by signing this petition, you're offering a plea of guilty to a felon in possession of a firearm, and that, of course, carries enhanced punishment under Section 99-19-81?" Wrenn again answered, "Yes, sir."

¶6. However, later in the hearing, the court advised Wrenn of the applicable maximum and minimum penalties as follows:

> Q. The maximum penalty to which you could be sentenced by offering a plea of guilty to these charges is ten years in prison and a five thousand dollar fine. That ten years is without parole or shortening or any credit for good time or anything like that.
>
> A. Yes, sir.
>
> Q. *And the minimum punishment is one year in prison and zero fine. Has that been explained to you?*
>
> A. *Yes, sir, it has.*
>
> Q. . . . Do you understand that if I sentence you to whatever I sentence you to in this case if it involves jail time, that you're not going to be entitled to any parole or early release? Do you understand that?
>
> A. Yes, sir.
>
> . . . .

A.     Excuse me, Your Honor.  You said anything that you sentence me to?

Q.     Yes, sir.

A.     Any jail time?

Q.     Any jail time, yes, sir, because you're charged under the habitual criminal statute, and you don't have any assurances of a parole in any case.  That's up to the probation and parole board.  You don't have any assurances of getting early release or parole.

A.     I'm sure the mistake is with me.  I do understand what the statute implies, Your Honor.

       THE COURT: Mr. Jones, do you want to take him over there a second and be certain he understands that?

       [OFF THE RECORD]

A.     I understand.

Q.     Do you understand now?  Do you have any questions about early release that I can answer for you or Mr. Jones can?

A.     No, sir.

Q.     . . . At this point it appears that you are entering what we call an open plea.  There's not going to be a recommendation at this point made to me.  At some point if a recommendation is made, I want you to understand that I don't have to follow it.

A.     I understand.

Q.     I can completely ignore the recommendation and sentence you to the maximum provided by law.  Do you understand that?

A.     Yes, sir.

(Emphasis added).  At the end of the hearing, the court accepted Wrenn's guilty plea as freely and voluntarily given.  Wrenn's sentencing hearing was set for February 17, 2012.

4

¶7. Prior to sentencing, Wrenn had second thoughts about his guilty plea. He asked Jones to file a motion to withdraw his plea, but Jones refused, so Wrenn found a new lawyer, Sidney Beck. On January 13, 2012, Beck filed a motion to allow Wrenn to withdraw his guilty plea, arguing that Wrenn's possession of the shotgun in his truck was not a crime. This argument was squarely foreclosed by binding Mississippi Supreme Court precedent,[1] and Wrenn's motion was denied on the day of his sentencing hearing.

¶8. After denying Wrenn's motion to withdraw his plea, the court proceeded directly to sentencing. The court initially pronounced that Wrenn would "serve a term of five years in the Mississippi Department of Corrections" to "be served pursuant to Section 99-19-81." The State objected that "a mandatory ten-year sentence" was required pursuant to section 99-19-81. The court acknowledged its "mistake" and sentenced Wrenn to "ten years pursuant to 99-19-81," i.e.,"without parole eligibility."[2]

¶9. On June 26, 2014, Wrenn filed a pro se PCR petition. Wrenn alleged that he pled

---

[1] Wrenn relied on Mississippi Code Annotated section 97-37-1 (Rev. 2014). Subsection (1) of that statute prohibits the carrying of a concealed weapon without a license. *Id.* § 97-37-1(1). Subsection (2) provides that "[i]t shall not be a violation *of this section* for any person over the age of eighteen (18) years to carry a firearm or deadly weapon concealed within the confines of . . . any motor vehicle[.]" *Id.* § 97-37-1(2). (Emphasis added). As the Supreme Court has held, subsection (2) merely provides that the concealment of a weapon in one's own home or a motor vehicle is not a violation *of the concealed weapons statute*. Subsection (2) does not authorize the possession of a weapon by a convicted felon in any place, which is prohibited by section 97-37-5. *See James v. State*, 731 So. 2d 1135, 1137-38 (¶¶10-13) (Miss. 1999); *Evans v. State*, 813 So. 2d 724, 728-29 (¶24) (Miss. 2002).

[2] Wrenn filed a direct appeal from his judgment of conviction in which he advanced the same argument as in his motion to withdraw his guilty plea, but because Wrenn's conviction was the result of a guilty plea, the Supreme Court dismissed the appeal for lack of jurisdiction. *Wrenn v. State*, 121 So. 3d 913, 915 (¶4) (Miss. 2013).

guilty because Jones had misinformed him regarding the circuit court's sentencing discretion. Wrenn further argued that the court did not correct Jones's erroneous advice during his plea hearing. In his petition and accompanying affidavit, Wrenn claimed that Jones assured him that the circuit judge would not sentence him to more than five years' imprisonment. Wrenn alleged that Jones told him that the judge had discretion to sentence him to less than ten years, that a guilty plea was his only chance to be sentenced to less than ten years, and that if he pled guilty, the judge would impose a sentence that the judge "deem[ed] . . . fair." Wrenn averred that he decided to plead guilty based on this erroneous advice.

¶10. The State's response to Wrenn's petition included an affidavit from Jones. Jones's affidavit recounted that Wrenn rejected the State's initial plea offer and that when he eventually decided to plead guilty, his only options were "to proceed to trial or plead 'open' as a . . . habitual offender." Jones further averred: "I asked the prosecutor to agree to allow Wrenn to enter his plea but continue the case for sentencing so that Wrenn could present proof pursuant to the proportionality analysis outlined in Pool v. State, [724] So. 2d 1044, 1050 (Miss. [Ct. App.] 1998). The prosecutor agreed to continue the sentencing for that reason."

¶11. On March 18, 2015, Wrenn represented himself at a hearing on his PCR petition. At the hearing, Wrenn gave a statement under oath that substantially tracked his affidavit. On March 31, 2015, the circuit court entered an order denying Wrenn's petition. As to Wrenn's claim that his plea was involuntary, the court noted that Wrenn presented only his own

6

testimony at the hearing.[3] The court reasoned that Wrenn's present claim that Jones had told him that the court would be lenient if he entered a guilty plea contradicted Wrenn's testimony at his plea hearing that no one had made any "promises" to him in order to induce him to plead guilty. The court also noted that Wrenn testified at the PCR hearing that Jones refused to give him anything "in writing" guaranteeing that the court would impose a sentence of five years or less.

¶12. In addition, the court reasoned that when Wrenn was sentenced, the court did have discretion to sentence Wrenn to a lesser sentence under the "proportionality" analysis discussed in *Pool v. State*, 724 So. 2d 1044, 1049-50 (¶¶28-31) (Miss. Ct. App. 1998). However, Wrenn's new lawyer did not make a proportionality argument at his sentencing hearing. The court further noted that during Wrenn's sentencing hearing, the court had explained that Wrenn could receive up to the maximum sentence and gave him an opportunity to discuss the implications of pleading guilty as a habitual offender. For these reasons, the court ruled that Wrenn's plea was voluntary and made with full knowledge that he could receive ten years without parole. Wrenn filed a timely notice of appeal.

**ANALYSIS**

¶13. When we review a circuit court's decision to deny a PCR petition, the circuit court's factual findings will not be disturbed unless they are clearly erroneous, but questions of law are reviewed de novo. *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999). The petitioner

---

[3] Wrenn submitted an affidavit from a witness who claimed to have been present at some of Wrenn's meetings with Jones. The witness's affidavit corroborated parts of Wrenn's affidavit, but the witness did not appear to testify at the hearing on Wrenn's petition.

bears the burden of proving by a preponderance of the evidence that he is entitled to relief. *See* Miss. Code Ann. § 99-39-23(7) (Rev. 2015).

¶14. Wrenn argues that the circuit court erred by denying his PCR petition because his plea was not knowing, voluntary, and intelligent. Specifically, Wrenn contends that his plea was not voluntarily and intelligently entered because his attorney and the circuit court misinformed him regarding the applicable minimum sentence.

¶15. "The Mississippi Supreme Court has repeatedly held that a defendant must be advised of 'the consequences of pleading guilty; and the minimum and maximum sentences which he or she may receive.'" *Courtney v. State*, 704 So. 2d 1352, 1358 (¶27) (Miss. Ct. App. 1997) (quoting *Drennan v. State*, 695 So. 2d 581, 586 (Miss. 1997)); *see also* URCCC 8.04(A)(4)(b) ("When the defendant . . . wishes to plead guilty . . . , it is the duty of the trial court to address the defendant personally and to inquire and determine . . . [t]hat [he] understands . . . the maximum and minium penalties provided by law . . . .").[4] When the circuit court fails to advise the defendant of the applicable maximum and minimum sentences, the defendant's guilty plea must be vacated, *see Vittitoe v. State*, 556 So. 2d 1062, 1065 (Miss. 1990), unless the defendant received that information from some other source, such as his attorney, *see Courtney*, 704 So. 2d at 1359 (¶29).

¶16. The present case does not involve a mere failure to inform the defendant of the relevant minimum sentence. Rather, at his plea hearing, Wrenn was misinformed that he could be sentenced to as little as one year in prison. This was erroneous because Wrenn pled

---

[4] This requirement is incorporated into the new Mississippi Rules of Criminal Procedure. *See* Miss. R. Crim. P. 15.3(d)(2) (effective July 1, 2017).

guilty as a habitual offender under section 99-19-81. "Sentencing under [section 99-19-81] is not discretionary. . . . [T]he trial judge has no alternative but to sentence [the defendant] under said statute," which in this case required the judge to impose a sentence of *ten years'* imprisonment, without eligibility for probation or parole. *Courtney*, 704 So. 2d at 1360 (¶34) (alteration omitted) (quoting *Harris v. State*, 527 So. 2d 647, 651 (Miss. 1989)). As discussed above, the same misinformation—that the applicable minimum sentence was one year in prison—was also set out in Wrenn's petition to plead guilty. In addition, the circuit court went on to advise Wrenn that because he was entering an "open" plea, the court could "completely ignore [any] recommendation and sentence [Wrenn] to the maximum provided by law." In doing so, the court again gave the misimpression that it had discretion to impose some sentence less than the "maximum provided by law." In reality and as a matter of law, any "recommendation" would have been completely irrelevant because the court had no alternative but to sentence Wrenn to a mandatory ten years in prison. As this Court held in *Courtney*, when a defendant is misinformed as to the consequences of pleading guilty pursuant to section 99-19-81—and led to believe that the statute permits the court to sentence him to anything less than the maximum applicable sentence—his guilty plea is not voluntary and must be vacated. *Courtney*, 704 So. 3d at 1360 (¶34).[5]

---

[5] We also note that the circuit court erroneously implied that Wrenn might be eligible for parole. The court told Wrenn: "[B]ecause you're charged under the habitual criminal statute, . . . you don't have any assurances of a parole in any case. That's up to the probation and parole board. You don't have any assurances of getting early release or parole." It was misleading to tell Wrenn that he had no "assurances of getting early release or parole"—which implies that parole was a possibility, even if it was in no way assured—because the truth was that there was no *possibility* of early release or parole. *See Thinnes v. State*, 196 So. 3d 204, 209-10 (¶21) (Miss. Ct. App. 2016).

¶17. Further, there is no evidence in the record that the misinformation conveyed to Wrenn at his plea hearing was corrected in any way. Jones's affidavit states that he intended to make a constitutional "proportionality" argument at Wrenn's sentencing hearing, but the affidavit fails to address or deny Wrenn's sworn statements that Jones told him that the court was likely to sentence Wrenn to five years' imprisonment or less. Nor does Jones's affidavit indicate that he ever explained to Wrenn that the sentencing judge lacked discretion under the habitual offender statute and could deviate from the statute's command only based on an extraordinary finding that a ten-year sentence would violate the Eighth Amendment to the United States Constitution. Rather, the only evidence in the record is that Wrenn pled guilty because he believed that the circuit court had discretion to sentence him to less than ten years in prison, and the circuit court compounded Wrenn's misunderstanding by expressly advising Wrenn that the applicable statutory minimum was only one year in prison.

¶18. The State's primary argument on appeal is that "Jones did not misinform Wrenn when he advised him that the trial court could offer leniency, and Wrenn's guilty plea was not based on misinformation." Citing *Pool*, 724 So. 2d at 1049 (¶¶28-30), the State reasons that a sentencing court "can impose [a] more lenient sentence[] in circumstances where a constitutional proportionality review requires it to do so." In essence, the State argues that the mandatory sentence required by section 99-19-81 is not truly mandatory because the sentencing court might have concluded that a ten-year sentence was unconstitutionally cruel and unusual. This simply is not the case. To reiterate, "sentencing under [section 99-19-81] is not discretionary," and the sentencing "judge has no alternative but to" impose the

mandatory sentence required by the statute. *Courtney*, 704 So. 2d at 1360 (¶34) (quoting *Harris*, 527 So. 2d at 651) (brackets omitted). "It is the [L]egislature's prerogative, and not this Court's"—and not the sentencing court's—"to set the length of sentences." *Stromas v. State*, 618 So. 2d 116, 123 (Miss. 1993). It is then the sentencing court's duty, in accepting a guilty plea, to ensure that the defendant understands the sentencing parameters that the Legislature has established. URCCC 8.04(A)(4)(b).

¶19. Both the U.S. Supreme Court and the Mississippi Supreme Court have emphasized that "outside the context of capital punishment, successful challenges to the proportionality of a particular sentence will be *exceedingly rare*." *Barnwell v. State*, 567 So. 2d 215, 220 (Miss. 1990) (quoting *Solem v. Helm*, 463 U.S. 277, 289-90 (1983)) (emphasis added; emphasis and brackets omitted). Thus, a sentencing court should not even consider *Solem*'s three-factor proportionality analysis unless "a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" *Thomas v. State*, 48 So. 3d 460, 479 (¶58) (Miss. 2010) (quoting *Johnson v. State*, 950 So. 2d 178, 183 (Miss. 2007)). "Generally, sentences that do not exceed the maximum term allowed by statute will not be considered grossly disproportionate . . . ." *Id.* at (¶59). Thus, for example, on three different occasions, the Mississippi Supreme Court has held that a mandatory fifteen-year sentence for forging a check is not unconstitutionally disproportionate, even if it is enhanced under section 99-19-81 based solely on prior convictions for nonviolent crimes. *See Barnwell*, 567 So. 2d at 219-22. Given this precedent, there would have been no basis for the circuit court to refuse to apply the mandatory sentence applicable in Wrenn's case. Put

simply, Wrenn's ten-year sentence was not cruel and unusual punishment.

¶20. Accordingly, Jones's plan to make a "proportionality" argument at sentencing cannot justify the misinformation that Wrenn received at his plea hearing. Indeed, if we were to accept the State's argument, a sentencing court would never need to inform the defendant of the applicable minimum sentence because there is always a theoretical possibility of "proportionality" review. The State's argument would effectively nullify the requirement that the sentencing judge advise the defendant of the applicable minimum punishment provided by law.

¶21. Finally, Wrenn's plea and conviction cannot be upheld simply because he stated under oath at his plea hearing that no "promises" had been made to induce him to plead guilty or because the circuit court warned him that he *could* receive the maximum sentence provided for by law. These points simply do not address the misinformation that Wrenn received. Wrenn's claim that he was misinformed of the applicable statutory minimum is not a claim that he was "promised" anything; rather, Wrenn has established that he was misinformed as to the nature of his *possible* sentence. And by advising Wrenn that he *might* receive the statutory maximum, the circuit court only reinforced its prior misstatements that Wrenn was eligible to be sentenced to anything less.

¶22. In summary, Wrenn was misinformed of the true mandatory minimum that he faced as a habitual offender. At no time during his plea colloquy did the court inform Wrenn of the ten-year mandatory minimum sentence. Rather, the court erroneously advised Wrenn that he was subject to a minimum sentence of one year in prison. This same misinformation is

12

also found in Wrenn's plea petition. There is nothing in the record to show that Wrenn was ever advised of the true minimum sentence required by the habitual offender statute. Accordingly, Wrenn established by a preponderance of the evidence that his plea was involuntary, his conviction must be set aside, and the circuit court erred by denying his PCR petition. *Courtney*, 704 So. 2d at 1358, 1360 (¶¶20, 34).

## CONCLUSION

¶23. For the foregoing reasons, we reverse and render the judgment of the circuit court denying post-conviction relief. Wrenn's conviction is set aside, and the case is remanded to the circuit court's active docket. *See Henderson v. State*, 170 So. 3d 547, 554 (¶¶24-25) (Miss. Ct. App. 2014); *Catchings v. State*, 111 So. 3d 1238, 1241 (¶¶10-12) (Miss. Ct. App. 2013); *Courtney*, 704 So. 2d at 1358, 1360 (¶¶20, 34).

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY DENYING THE PETITION FOR POST-CONVICTION RELIEF IS REVERSED AND RENDERED. THE APPELLANT'S CONVICTION IS SET ASIDE, AND THIS CASE IS REMANDED TO THE ACTIVE DOCKET OF DESOTO COUNTY. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**